UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO. 8:20-cr-371-WFJ-TGW

CARLOS RIGBY SMITH
_____/

## SENTENCING MEMORANDUM OF THE DEFENDANT, CARLOS RIGBY

## SMITH

The Defendant, CARLOS RIGBY SMITH, by and through his undersigned

counsel, hereby submits the following sentencing memorandum of fact and law:

### Factual Background

Mr. Smith never had it easy. As the oldest of six children, things started out

with at least a little promise. His father was a college professor and his mother was

a seafood merchant. Things were going well, that is, until his father began a slow and

downward path of addiction. That led to divorce and the disintegration of the family.

Mr. Smith tried living with his father, but it really did not work out. The

relationship with his father was less parental and more master and slave. His father,

too busy with his addictions to work, basically sold out his young son as an

1

indentured servant.  Instead of learning positive things from his father, Mr. Smith learned codependency.  Instead of growing up an independent person, Mr. Smith learned how to basically be a slave, working from sunup to sundown for folks who often beat him or starved him for various indiscretions, both real and imagined. Meanwhile, his father got the paychecks, which were promptly spent on addictions and not on Mr. Smith.

Mr. Smith eventually went back to live with his mother, apparently when things got so bad that folks could no longer turn a blind eye, even under Nicaraguan child protection standards.  However, it seems that Mr. Smith's condition did not improve, but simply took a lateral shift: changing masters, but the same old slavery.  Mr. Smith was essentially assigned the task of both caring for all the children, caring for the house, and running the seafood business while Mom was running around doing whatever.  Meanwhile, Mr. Smith was not going to school and was not enjoying anything like a childhood.  In addition to basically being the mother of the house, his biological mother (much like his father) sold him out as an indentured servant.  Once again, these folks worked him, beat him, mistreated him, and Mr. Smith never saw a single *peseta*.

Mr. Smith finally managed to escape this hell on earth somehow, and tried to blend into society as a "normal" person with a normal family.  However, a lifetime

of codependency, trauma, and learned helplessness takes it toll, and often surfaces again at the worst possible times and under the worst possible conditions. The fishing industry in Nicaragua has been suffering from low prices for the past two years due to decrease in market demand due to virus issues and overfishing by Venezuelan vessels, whose economy is still in meltdown. This left Mr. Smith, who had a limited education and limited job skills, unemployed and trying to support his family.

He began to get desperate, and that is when all of the old stuff from his childhood came back to haunt him. He let abusive people cozy up to him. A normal person would likely resist, but someone who has been trained since childhood to be a willing slave has no resistance. Mr. Smith was an easy mark for the drug trade. Before he knew it, Mr. Smith was under the thumb of a new abuser, at their beck and call: their slave.

And that is where his troubles began. One thing led to another, and now Mr. Smith is in United States District Court.

The 3553 Factors

According to the Presentence Report as currently written, Mr. Smith's total offense level is 25, with a criminal history category of I, with an advisory guidelines sentencing range of 57-71months. (PSR Pg. 6, Para. 31; Pg. 11, Para. 72). Because Mr. Smith meets safety valve criteria, this Court can sentence without regard to any

statutory minimum mandatories.  (PSR Pg. 11, Para. 71).

One of the 3553 factors is the "need for the sentence imposed . . . to provide just punishment for the offense."  18 **U.S.C.** sec. 3553(a)(2)(A).  Also, any sentence should also consider the circumstances surrounding the offense.  See 18 **U.S.C.** sec. 3553(a)(1).  Mr. Smith certainly admits what he did was wrong, and he certainly deserves to be punished for it.  However, his punishment should be considered in the light of the obviously desperate circumstances from which this offense arose, combined with Mr. Smith's years of mistreatment and abuse.

In this case, even the United States Probation Office believes that a variance is warranted due to Mr. Smith's horrible history of slavery and indentured servitude. (PSR Pg. 13, Para. 88(a)).  While Mr. Smith's guideline range is not fatal, even some time in a federal prison, far away from one's homeland and family, is quite the punishment.

In this case, Mr. Smith would suggest a sentence of 36 months would be more than sufficient to impress upon Mr. Smith the need not to do this again, while, at the same time, not force his family into the same fate as Mr. Smith due to his absence. Often, vicarious traumatization is just as devastating as direct traumatization.  Here, an entire family is at stake: a spouse who will not see her husband, and children who will not see their father.  In the meantime, the lack of income may force them down

the same dark path that Mr. Smith once traveled as a young boy.  If we truly want to see the end of these boats on the high seas, we have to make sure we are not accidentally creating the next generation of boatmen in our zeal to punish present offenders.

CERTIFICATE OF SERVICE

I certify that, on October 21, 2021, a true copy hereof was furnished to: Daniel Michael Baeza, Assistant United States Attorney, through the CM/ECF system, and to John P. Pryor, United States Probation Officer, by email at John_Pryor@flmp.uscourts.gov.


/s/Christopher Desrochers
Christopher Desrochers
Christopher A. Desrochers, P.L.
2504 Ave. G NW
Winter Haven, FL  33880
(863) 299-8309
Fax:(863) 229-2839
Fla. Bar #0948977
cadlawfirm@hotmail.com
Appointed Counsel for Defendant.